WILLIAM H. PRICE, CHARLES H. J. WOLFSOHN AND GEORGE J. PLECHNER, EXECUTORS, PROSECUTORS, v. EDWARD I. EDWARDS, COMPTROLLER, ETC.

Submitted July 2, 1915—Decided April 4, 1916.

1. The act of 1912 (*Pamph. L., p.* 367), providing for a tax on the transfer of property of resident and non-resident decedents by devise, bequest, &c., in certain cases, exempting property passing to churches, hospitals and orphan asylums, public libraries, bible and tract societies, religious, benevolent and charitable institutions and organizations, did not exempt a bequest of a charitable institution located outside of the State of New Jersey.

2. A bequest to the "United Hebrew Charities," a corporation of the State of New York, while obviously a bequest to a charitable institution, did not come within the exemption above recited.

On *certiorari.*

Before Justices Parker, Minturn and Kalisch.

For the prosecutor, *W. Edwin Florance.*

For the defendant, *John W. Wescott,* attorney-general, and *Theodore Backes,* second assistant attorney-general.

The opinion of the court was delivered by

Kalisch, J. The prosecutors' testatrix, a resident of New Brunswick, in this state, died on December 23d, 1913. A transfer inheritance tax was assessed by the comptroller against the estate disposed of by her under the fifth and seventh provisions of her will. It is only necessary for the purpose of presenting the questions raised in this case to set out the seventh clause of the will, which provides: "At the end of the period of ten years above mentioned I give, devise and bequeath the principal sum of my said estate then in the hands of my executors, with any and all accumulations of interest thereon, to the United Hebrew Charities, a corporation whose present address is No. 356 Second avenue, New York City, in trust to keep the same safely invested and to use the interest and income thereof for the support and maintenance of the Jewish poor people of the city of New Brunswick." The fairness of the amount assessed is not disputed. The first objection urged by the prosecutors against the validity of the tax is that the bequests are to a charitable institution for a charitable use within the State of New Jersey and are therefore within the clause of the act of 1912, exempting property passing to charitable institutions.

The prosecutors rely for support of their contention on the exemption contained in section 3 of the Inheritance Tax act of 1912 (*Pamph. L., p.* 368), amendatory of section 1, paragraph 4 of the act of 1909, page 326.

Section 3 of the act of 1912 provides: "Property passing to churches, hospitals and orphan asylums, public libraries,

bible and tract societies, religious, benevolent and charitable institutions and organizations * * * shall be exempt from taxation." In tracing the statutory history of this exemption clause we find that in the act of 1894 (*Pamph. L., p.* 318), the exemption clause excepted from the operation of the act property passing to churches, hospitals and orphan asylums, public libraries, bible and tract societies, and all religious, benevolent and charitable institutions and organizations in trust or otherwise, &c.

This clause was construed in *Alfred University* v. *Hancock,* 69 *N. J. Eq.* 470, by Vice Ordinary Reed, who held that it did not exempt gifts and bequests to charitable institutions located outside this state from a transfer tax. And (on *p.* 471) the learned Vice Ordinary said: "The overwhelming weight of authority is that where the legislature grants exemptions from such a tax to corporations or organizations, it includes in the exemption only domestic corporations and organizations."

The effect of the act of 1898, which is a supplement to the act of 1894 (*Pamph. L.* 1898, *p.* 106), which exempts from a transfer tax bible or tract societies, or religious institutions, boards of a church or organization thereof, in trust or otherwise, though not confined in their operations and benefactions to local or state purposes but for the general good of the people interested therein of the United States or of foreign lands, as the board of home and foreign missions of various church denominations, regardless of the fact whether such societies, religious institutions or boards are organized under the laws of this state or incorporated under the laws of some other state, was also considered in the case above cited and held that the exemption did not extend to any other institutions than those expressly described and mentioned therein.

It is obvious that the United Hebrew Charities, a corporation organized under the laws of the State of New York, does not come within the category of the institutions exempted by the act of 1898 from a transfer tax. It is neither a bible

nor tract society. It is not a religious institution. The mere fact that its benefactions are limited to those of the Hebrew faith does not constitute it a religious institution within the meaning of the Exemption act of 1898. It is purely a charitable organization.

The question as to the immunity of charitable institutions not organized under the laws of this state, from the imposition of a transfer tax, was presented in the case of Rothschild. 71 *N. J. Eq.* 210. In that case a bequest was made to the "Hebrew Benevolent and Orphan Asylum," a corporation of the State of New York, and Ordinary Magie held that it was not exempt under the act of 1898, following *Alfred University* v. *Hancock, supra.* This case was affirmed on appeal. 72 *Id.* 425. That an institution in order to be entitled to the exemption under the act of 1898 as a religious institution must be such in fact is illustrated by Vice Ordinary Bergen in his opinion in the *Jones' Case,* 73 *Id.* 353; affirmed by Court of Errors and Appeals, 74 *Id.* 447.

Thus we have it established by the settled law of this state that the exemption clause in the act of 1894 refers exclusively to domestic charitable corporations and that the Exemption act of 1898 refers to religious institutions or bodies either domestic or foreign. The "United Hebrew Charities" being neither a domestic charitable corporation nor a domestic or foreign religious institution does not, therefore, come within the scope of either act.

Next came the act of 1906 (*Pamph. L., p.* 432), the third clause of which is in substance the same as found in the act of 1894. It does not, however, contain the provision of the act of 1898 to the effect that the exemption extends to religious institutions, whether domestic or foreign. We must assume that when the act of 1906 was enacted, the legislature had full knowledge of the construction placed by the courts of this state upon the exemption clauses of the acts of 1894 and 1898.

Therefore, when that legislative body practically enacted the exemption clause of 1894 and took care to cover the entire

subject-matter contained in the act of 1898, without, however, adopting the extension of the benefit of the later act to religious bodies, whether organized under the laws of this state or not, it was tantamount to a legislative construction that the corporations of the nature mentioned in the exemption clause were intended to be domestic corporations.

In the case of Gopsill (77 *N. J. Eq.* 215) the effect of the Exemption act of 1906 upon the acts of 1894 and 1898 was directly discussed and considered by Vice Ordinary Walker, and he there points out with perspicacity, supported by sound reasoning, that its effect, in view of the decision of the courts of this state, was to limit its operation to domestic corporations.

It is to be borne in mind that this case was decided in 1910 and that it was not until 1912 that the exemption clause under which the prosecutors claim was enacted.

The phraseology of section 3 of the act of 1906, relating to the exemption of religious and charitable institutions, is the same as that of section 4 of the act of 1909 and section 3 of the act of 1912.

This legislation, coming as it did after the decision in the Gopsill case, lends additional force to the conclusion that it was the clear legislative intent to limit the operation of the exemption to domestic corporations. It appears that the exemption clause was again amended in 1914, but we are not concerned with that because the law requires the tax to be assessed as of the market value of the property of which the decedent died as of the date of the death of such decedent, which in this case was December, 1913, and therefore it is manifest that the act of 1914 can have no application.

The other grounds urged by counsel for the prosecutors in his elaborate brief, against the validity of the assessment, may be summed up as follows: That the United Hebrew Charities cannot qualify as a trustee unless it becomes authorized to carry on its business in New Jersey either by filing a certificate or by local incorporation; and that this it is not under the law permitted to do, because of the nature of its

corporation; that if it does incorporate for the purpose it will be a domestic corporation and exempt from tax; that if it does not qualify as trustee, a domestic charitable corporation would be appointed as substituted trustee who would not be subject to a tax; that the estate consists of an interest in remainder which is contingent and not assessable until it vests in possession.

Without assenting to the legal accuracy of these propositions it is apparent that they are in the main purely speculative and founded upon some future action that may be taken by the United Hebrew Charities, with which we are not concerned. As to the claim that the estate consists of an interest in remainder which is contingent and therefore not assessable, we find that to be without any substance.

We are only concerned with the situation at the death of the testatrix. The estate is a vested one. It vested in the United Hebrew Charities at the death of the testatrix. It is true that the *corpus* of the estate does not come into the actual possession of the United Hebrew Charities until the prosecutors, the executors, have administered it for a period of ten years, but that fact does not strip it of the character of a vested estate. Such an estate is required by section 2 of the act of 1909, page 307, to be appraised immediately at its clear market value and after deducting from such appraisement the value of the particular estate, &c., the tax on the remainder shall be levied and assessed immediately.

The procedure pointed out by the statute was followed in the present case. We find, therefore, that the tax was properly levied and assessed.

The writ will be dismissed and the assessment affirmed.